Ladies and gentlemen, please rise. This court is now in session. Please be seated. Case 3-15-01-77. People of the State of Illinois. Appellee by Jackson Morton v. Anthony Moore. Please be seated. Good morning. May it please the Court, Counsel, I am Jay Wigman, an Assistant Appellate Defender with the Office of the State Appellate Defender. Counsel for Defendant Appellant Anthony Moore, who asserts that trial counsel was ineffective for failing to file a motion to quash arrests and suppress evidence where the officer lacked probable cause to arrest the defendant because the incriminating nature of the substance the officer saw underneath the defendant's fingernail was not immediately apparent. There is a second issue raised in brief as well. In that, the defendant argues that because the parties agreed to a fine of $1,500, but the defendant actually paid $2,690 after mandatory fines of $1,190 were added, the defendant should be refunded $1,190. Given the nature of the first issue, and given my penchant for using ten words where one will do, I suspect that we won't have time to get to the second issue. In that instance, I'll stand on the brief. Unless there are questions. If there are questions, I will certainly answer those at any time, and if I have time, I will address them. Turning to the first issue, while the argument might be somewhat lengthy, the facts are relatively simple and straightforward. The defendant was pulled over for failure to signal. The officer, in speaking with the defendant, believed that he saw a powder substance on his fingernail, I believe on his left pinky, and determined that that was cocaine. He seized the defendant for the purpose of testing the finger. A field test tested positive for cocaine. It was then that the car was searched, and it was then, according to the state as well, that the officer had probable cause to search the car, and that's when the cocaine was found. Ordinarily, a warrant is required for a search or a seizure such as this. The plain view doctrine, however, is an exception and allows such a search, but it first requires that the item be in plain view, and more importantly, that its incriminating nature be immediately apparent. That's your whole case here on that argument. I'm sorry, what? That's your whole case on that argument, is that it? That you can't tell that cocaine is cocaine by looking at it. Well, I mean that, what you said, incriminating on its face, right? And case law reflects that. Case law has indicated two things about this type of case. The first is that the observation of powder alone is not sufficient to determine that it has an incriminating nature. The second is that while many items have been considered to be corroborative of the belief that something is contraband, for instance, straws or powders specifically related to cocaine, razor blades, mares, fingers have never been associated or used as corroboration that a substance is cocaine. In fact, no part of the body has been indicated. Or the substance has been seen on the defendant's face. It still doesn't demonstrate that the item is cocaine. The state's argument would be because it was cocaine, because fingers are used to ingest cocaine, it was cocaine. But the fact of the matter is this court said in 1978 in Polanza that cocaine itself, the nature of it cannot be determined merely by the observation. And that was based largely on an expert who regularly testified for the state, worked for the Bureau of Identification. But really what we have here is that he said, okay, straws. Okay, so let's say he's pulled over, whether it's contextual or not, he's pulled over, and somewhere the officer sees in discussing the pullover on the console is a McDonald's straw. Okay? And there appears to be something white on it. Where would you be on that? I think, again, it's the entire context of the situation. Why don't I give it to you? Hmm? I just gave it to you. It's the entire context. And if a straw was seen with the powder under ordinary circumstances, the case law has suggested that that's indicative of it. But generally... So in other words, your argument is the instrumentality of ingesting cocaine is what you need here. That doesn't give rise to probable cause. And that being the pinky finger. Correct. And that was where the substance was allegedly, a white powdery substance or something white of powder, was seen on the little pinky finger. That's correct. And that is not an application of criminal activity. It is not. And the cases that justify the use of a straw, for instance, as corroboration of contraband, did so somewhat reluctantly and with hesitation because of the ubiquity of straws, of spoons. And it's not so much that a person has a spoon, but the context in which he has the spoon. The fact that the straw is in the McDonald's cup suggests more that it's used for drinking Coca-Cola or whatever is in the cup. I didn't put it in the cup. I just said it's lying there on the council. Then I misunderstood the question. I thought the straw was in the cup. No. If it's outside the cup, then I suppose that indicates that it's being used for a purpose other than the cup. But here, there's nothing to indicate that the hand was being used for cocaine or for any illicit purpose when there are a great number of innocent purposes for which it could have been used. And you give those eating the donut, playing pool. Eating the donut, playing pool. If I were more imaginative, there are probably other instances. And that was the point of PLANZA where the court said that there are numerous powder, white, non-narcotic substances that anything that's observed by the police officer could be. There was nothing about this context that would have indicated that it was cocaine. The state has suggested that maybe it was the neighborhood that he was found in. But there was nothing at trial or in the state's brief to suggest that this was a neighborhood that was a drug neighborhood. And the same type of thinking came into Garcia when the officer saw a plastic bag, which when connected with cocaine can be an indication of packaging of cocaine. But all the officer saw was the plastic bag and didn't see the rock of cocaine or the powder that was within it. And the court in that instance noted that there was no testimony, nothing to indicate that this was a drug neighborhood. So that context plays into it as well. There was nothing to suggest that the defendant was at a restaurant and that, therefore, that it was a restaurant that was frequented by drug users. It was a pizza parlor. It was a pizza parlor. And I'll be naive enough to suggest that the opposite is true, that if this is an appropriate business and properly run, that it's not a place that's likely one that's used by people for the ingestion of drugs. So to vary it just a little bit, you wouldn't be here if the powder was found somewhere around the nose? I think I would. And the reason for that is, and again drawing on personal experience, if I'm eating a donut, I'm likely to get it on my face. Or at least my children are. Maybe I've graduated to better behavior. But the fact that it's on the face, and I noted this in the brief as well, that alone does not indicate that it was used for illicit purposes. Have drug neighborhoods been identified by the police in the state? Well, we'll read cases with some frequency where they'll say this is a neighborhood known for drug usage, and there was nothing within this case to suggest that this was so. I believe it was just down the street from the courthouse. Have restaurants been identified as drug restaurants? That I don't know. What I'm suggesting is that there was nothing in the record to say this is an area that the cops were watching or concerned about as having been a place where drug users go or where transactions occur. And maybe it's more the transaction concern than the usage. But there was nothing about stopping the defendant to suggest that there was a drug concern. And certainly I suspect that if there were, the officer had in fact identified through a radio call the owner of the car, believed he knew who the driver was, didn't testify to any extent that he believed that he had a drug record, that he was somebody worth watching. Isn't it possible that there was a defense strategy going on here because the officer was parked there, watching the car, ran the plates while your client was nowhere around, learned some information about your client, waited until he pulled away. If I were writing from a different perspective, maybe I would call that. So profiling was going on. And the defense attorney did file a motion to quash and suppress the evidence by challenging the stop. So is it possible that he just picked the strongest argument by saying this stop was not authorized? Oh, and by the way, if you find it was authorized, we want you to suppress the cocaine and the pinky. So can you address whether this was maybe just a matter of defense strategy? It may have been a matter of defense strategy, but I would suggest that it was the wrong strategy. The stop is, I think, a very difficult one to challenge. Really? For failing to signal properly, it's a fairly clear-cut violation. It has to be done within 100 feet of the stop sign. There are a number of technical traffic stops that can be effectuated by police officers. I appreciate that argument. And the judge noted that this was likely a pretextual stop. But there was nothing he could do. There was nothing he could do. I accept your argument. You responded to my question very well. Five minutes, please, counsel. Thank you. In addition to... Is it possible for him to do that within 20 feet of the stop sign, apparently? Parallel park. The defendant's... The only violation is he never turned on his left turn signal to come out of the parallel park. Well, there were two there. But that one's undisputed. Right. But that's a matter of a violation, per se, regardless of the stop sign. Right. Would that have been sufficient to stop him? I believe it would have been. Okay. So within 100 feet. Is it within 100 feet? It's in the final 100 feet before the stop. So I had once thought it was 100 feet before you turn. It's within 100 feet of the lane change or the final turn that you're making. Then there's also the concern about failing to signal as he pulled away. Right. And the evidence, the defendant's evidence tended to show that it was within 100 feet. The officer's evidence that had been measured off showed that it was over 100 feet. I thought it was 20 feet. He was parked within 20 feet of the stop sign. I had thought the measurement was 65, but regardless, it was within 100 feet, according to the defendant, the officer. So had he left his signal on when he came and properly had done that, when he left the parallel parking, he would have been not in violation of the other section. That's correct. Okay. In addition to the difficulty of identifying, or maybe as a counterbalance to the difficulty  The safest side of people versus stout for the proposition that an officer's experience can help him to identify something. But in that case, it was burnt cannabis. And burnt cannabis has been noted by courts in Illinois as having a distinctive odor, as being easily identifiable, not meaning to send to glib. I would note that almost anybody who has been in college or to a rock concert would be able to identify cannabis. And in fact... By odor. By odor. Well, anybody who's very pleased and burnt leaves in the fall. Well... Similar odor on the floor. I haven't noticed it in my neighborhood, but perhaps there are neighborhoods where this is an issue. In stout, the officer testified that part of his experience was having been in college and noting the odor. And in Jones, the court noted that the issue of a one-hitter box and whether that was immediately identifiable as contraband had been something that had been discussed in court cases for 20 years. There are no court cases that reflect that the finding of cocaine on anybody's person, whether it's the mouth or a finger, is indicative of the use of cocaine. Because there was nothing to indicate that the powder was cocaine because there was nothing to corroborate the officer's belief, the officer lacked probable cause, and trial counsel was ineffective for failing to file a motion to suppress the evidence. If there are no further questions concerning that, I will try to address briefly the second issue regarding the fine that was paid. The defendant agreed to pay a fine of $1,500, and that was the agreement of the parties and then was entered as a separate order. Then there was an order entered as well that included fees and mandatory fines, and the mandatory fines totaled up to $1,190. The defendant suggests that what should have occurred in this case is that the fine would have actually equaled $310 in addition to the mandatory fines, and in that instance he would have satisfied his fine at $1,500 because of the negotiation with the state. Because, in fact, he paid an extra $1,190, which has been indicated as being paid by the court's office, that amount should be retained. Do you think it was really paid? Well, it was indicated as paid by the court's office. Do you think it really was paid? Or did the court's office just show a balance of zero? Because your client had no balance. Correct. So how did he pay it? Where did he pay it? Does he have a receipt? I would have to look at the sheet again. The indication was that it had been paid. The indication from the clerk's records does show a balance of zero. I don't mean to put you out of the spot, but you know how I feel about fines and fees and costs. I'm so transparent. The court order that the judge signed and your client approved had a total of $1,971, and that was signed on the day of the sentencing, March 12th of 2015. By April 17th, that amount of $1,971 has been increased in the clerk's tally sheet to $4,099. It's hard to understand. And in between, the clerk did another tabulation totaling $4,071. Based on the Warren case, which my respective colleague Justice Holdred and I wrote, you know, really we are saying or trying to say very loudly that the judge's order controls and whatever the clerk does after the fact is not a court order. So are you certain when you say the amount the judge ordered on March 12th, 2015 of $1,971, are you certain that was paid in full? The money that was delivered to the circuit clerk? I believe I included in the reply brief a statement by the clerk's office as to what had been paid. Now, whether that simply is them zeroing it out or whether it indicates payments that came in, I have that at the table. I can take a look and let you know. Would you be greatly opposed if we asked you to supplement the record by contacting the circuit clerk's office to get copies of receipts or something like that? I'd be happy to. I mean, I want to make sure it really was paid. But the point is well taken that the agreement was for a $1,500 fine, and the fines in this case on this sheet are actually below that. The fines total $712, I think, but under $1,500 in actual fines. So you know me. I'll delve into it very carefully. And look, your position is it was supposed to be $1,500 total, Including fines. Okay, $1,500 in fines plus court costs. Okay, so if the fines, have you gone through it to see which amounts on the sheet the judge signed actually were fines? I have. And what does your federal come up with? My total came up to be $1,190. Okay, that's less than $1,500. But he paid the $1,500 as well is our position. So that in total he was required to pay $1,500 plus the $1,190. Some of those were fees rather than fines. But you would agree that he's responsible for, you say $1,100. I calculate it differently, but I trust you every time I calculate it, I come up with a different number. So you're not opposed to paying the fines that are reflected in this sheet? If they're included within the $1,500. Okay. I'm now a little confused. The agreement was $1,500 out the door. I think Mr. Whitman is saying $1,500 in fines. I don't know. Let him tell me. What are you saying? I'm saying $1,500 in fines. And that includes the mandatory fines. The costs were separate.  It was $1,500 plus fees. But those fees that were considered by the circuit clerk to be fees and those mandatory fines, which can't be avoided, should have been subsumed by the $1,500. And somehow what you're saying is the clerk added fines that are not reflected on the sheet in addition. No. Okay. The fines that are listed on that sheet were the mandatory fines. In addition, he was ordered to pay $1,500 in fines. Oh, I see. Oh, okay. Okay, I get it. So the $1,500 doesn't include the mandatory fines. No, correct. But it should have is our argument. Okay. But he paid $4,099. There were other costs and things that were built into that, yes. And that was the attachment on your reply. Right. That was certified as correct by the deputy clerk. Correct. That's the total payments. That was the attachment to your reply. And our argument is that $1,190 of that was improperly assessed against the defendant. But the tally sheet from April 29th showed that there was a balance of $3,971, and I don't see where that money was received between 15 and 17. I will check and we'll supplement appropriately. That would be wonderful. So just to kind of conclude for my edification, $1,500 in fines was agreed upon. Yes. Okay. And you're saying that there's never discussion about costs. Costs are in addition, presumably. No, that's not what I'm saying, and I apologize. It's $1,500 in fines plus costs. Plus costs. Plus costs. Okay. We have no objection to the costs. Okay, so you're saying, okay, the costs, $1,500 includes the costs, correct? $1,500 includes the fines. So the mandatory fines are $1,190. Right. And then the fine, if you're going to bring it up to $1,500 for a total fine, is $310. That can only be used on fines is what you're saying. Right. Okay. Now, are there fines that will meet up that gap? I don't believe so. That's over. No? But I'm saying that the court could call, it's the $1,500, and rather than gap, I guess I'm looking at it as the fine that then results in addition to the mandatory fines and fees. Whatever the fines and fees were, I'm sorry, whatever the fines were going to be, it maxes at $1,500. If the mandatory fines had gone above that, then my argument would be different. The mandatory fines came in under the $1,500, and so the extra is kept by the court because the agreement was $1,500. Correct. If it can be demonstrated. And then if you were to walk out the door, so to speak, he's got to pay the costs, correct? Right. No argument there? Correct. And you're saying those costs plus the $1,500 that allegedly are fines only add up to a figure. I think I'm with you. Right? And that's the proper amount he should only be obligated to pay. Right. But instead, he was assessed a larger sum. Yes. He was assessed an additional $1,500. Well, you don't say what it is. He was assessed a larger sum because it's all nightmare as to what it is. Right. Okay. And so you're saying he shouldn't have to pay that additional whatever it is. Now I understand why you were hoping to avoid this issue. I wasn't hoping to avoid it. I had thought that the first was a more interesting issue. It is. It is. It is much more interesting. So I want to understand your argument. You are saying my client is happy to pay $1,500 in fines. And the total sheet the judge signed included only $1,190 in fines. So we agree that the difference of $310, if my math is correct, is something we are obligated to pay. We only want to pay $1,500 for fines, and we do not challenge any of the costs. Correct. All right. In the document dated April 17th, 2017, that you've attached to your reply brief, it says that disbursed of that $4,099, disbursed was $2,658. And then it says an escrow was $2,000. This is in the clerk's escrow count is $2,9242. Okay. That sounds correct. So there's an escrow count with $2,000 and $9,242 called by the clerk. And I'm not sure what that is. My bottom line is, and the panel doesn't mind you supplementing it, you are asking for us to return money. I just want to make sure the money was paid. Sure. Evidently, there's some money that's in that escrow count that can be returned. It's very hard to discern from the circuit clerk's records. I know he struggled with that as well. I mean, in April, I'm telling you, there was some money in that escrow count. Right. Yeah, from what the record indicated. Thank you. Good morning. May it please the Court, my name is Jasmine Wharton. I represent the people of the State of Illinois in this matter. The defendant's conviction for felony possession of a controlled substance was properly entered. Defense counsel did not render ineffective assistance of counsel. And the defendant received the benefit of his agreed-upon disposition. Now, for the first issue, defense counsel did render effective assistance. He employed a trial strategy, arguing what he determined to be the best argument for suppression, and his performance was not deficient. Defense counsel acted reasonably and did not prejudice the defendant's case. Now, to prevail in an ineffective assistance of counsel claim, the defendant must show that defendant's counsel performance did not reach a reasonable standard, that he somehow prejudiced the defendant's case by committing this error. Now, there's a strong presumption that defense counsel's behavior and performance fell within a reasonable range. But in this case, we see that the initial stop was lawful. Defense counsel made an argument for suppression that was unsuccessful, but still a valid argument to be made. There's no comments on the record about- What was that argument on the lawfulness that was stopped, but it was not lawful? So, the defendant was stopped for two traffic violations. There was a question as to whether or not he did, in fact, signal going out of his parallel parked space. There was another question that, did he use his turn signal in making a turn? You say there was a question. Was there a question or was there a statement by the arresting officer that he had done that? There was a statement, but defense counsel believed that it was an argument worth making, that the initial stop was unlawful. What was the controversial evidence there? Whether or not the traffic signal, I'm sorry, whether he was required to use his traffic signal because of where he had been parked versus where the actual stop sign was. Was it within 100 feet? That was the point in contention. Was he within 100 feet? Does it matter whether he was a mile away if he was parallel parked? He was charged with the offense of not signaling, leaving a parallel park. I think the larger issue- And I think opposing counsel says that would be a lawful stop. Agreed. I think the larger issue was the fact that he did not use his turn signal to make a turn at the stop sign. That's why I said a larger issue. They're both violations of the Motor Vehicle Code. Agreed. But when it was discussed in court, that was- One causes as much accident and mayhem as the other. Agreed. But defense counsel believed that the point in contention was mainly the fact that he did not use his turn signal at the stop sign. Is that really reasonable in effective assistance of counsel? With a simple motor vehicle, two alleged violations? The only one being controverted is the distance on one violation. Well, in this ineffective assistance counsel claim, opposing counsel is not arguing that that argument was ineffective. He's arguing that an additional argument should have been made. So the point in contention is whether or not there should have been a secondary argument or a supplemental argument. But if the first one is just a foolishness that a lay citizen would probably not make, it's like the only thing you're left with is a motion to suppress and there wasn't even one made. If the real issue is the one that he's suggesting was the failure by the defense counsel. It's kind of we've moved into that case law where there wasn't even a motion to suppress made. Right, so there was a motion to suppress the initial stop and all subsequent evidence- Yeah, but it was based on something that- Is it even reasonable that a trained attorney would make that argument? I think it is reasonable if your client is charged with possession of a controlled substance and you are questioning whether or not the stop should have been made in the first place. And the trial judge made a comment on record that perhaps this was a pretextual stop, but the defendant couldn't meet his burden otherwise. So defense counsel is not arguing that this argument- See, that's the thing that we're getting at, I think, the problem. I don't care what the trial judge says. The bottom line is there is a violation. That's done. There's one. It doesn't matter how far that car is parked away from the signal. Failure to signal when you are leaving a parallel car. It doesn't matter how far you are. Understood. And this is apparently all that the defense counsel is talking about. Rightfully saying, it seems they're focused on once you've got up the stop light or the stop sign, where's 100 feet or whatever. Right. And that seemed to be the primary issue in the argument. The secondary issue was that there was an additional violation and that he didn't signal when he was pulling out of his seat. Maybe that's not effective. Maybe that's really not effective assistance counsel to be doing that. Perhaps. I think that's their position. Well, the position in their brief is that another argument should have been made, not that that argument shouldn't have been made at all. So the issue is what happened once the stop occurred or subsequent to the stop, not the fact that he's upset that the argument was made about the initial stop. But we're overarching, we're looking at what kind of representation did this gentleman, receive? Correct. And the point in contention is whether or not this additional argument should have been made. Correct. Because we all have an interest in having our profession be held in great respect and with confidence. Absolutely. Absolutely. So defense counsel picked what he believed to be the strongest argument. He didn't believe that a claim about whether or not the officer had probable cause in this case was a worthwhile argument. This was a stipulated bench trial. So defense counsel agreed to all of the evidence or testimony given by the officer during that suppression hearing and then also stipulated to the factual basis given for the probable cause for arrest. Now, defendant argues that there is a reasonable probability that a motion to suppress on everything that occurred post-stop would have resulted in a different result for his client. It would have likely been successful. The people disagree. Central requirement in the Fourth Amendment is reasonableness. Now, there wasn't a warrant for search, but the Plainview Doctrine allows officers to seize an object without warrant if he views the object in a place that he's legally entitled to be. The stop was legal. Second, the object is immediately apparent to him to be the evidence of crime, contraband, or otherwise subject to seizure. Now, the officer said that when the defendant handed him his driver's license, he saw a white powdery substance under one fingernail, his pinky nail. Based on his experience as an officer, he testified that that is a common way for people to snort cocaine, placing it on their finger, whether that be your fingernail or on your actual finger, and snorting cocaine. It's not in dispute whether or not he saw the white powdery substance on the defendant's fingernail or in the defendant's fingernail. That part is not in contention, but that rose to give the officer under the Plainview Doctrine the ability to further investigate, which led to the defendant's arrest. This is including both viewing the white powdery substance under the defendant's fingernail. This is testing the substance, asking the defendant to get out of his car, doing a field test, finding out that it was cocaine, doing a search of the vehicle, finding a small bag of cocaine in the car, and eventually the defendant being taken in for this charge. So the people's position is that this argument that the defense counsel was ineffective for making this argument is just disagreeable. We don't agree with that argument. Defense counsel was invoking his trial strategy, and it didn't include making this argument. Now, as for the second issue, when it comes to the fines and fees, there was an agreed-upon disposition. 24 months probation, $1,500 fine, plus court costs. Now, the defendant agreed to this disposition, signed off on the felony and misdemeanor supplementing sentencing order, signed by all parties, including the trial judge, which included mandatory fines. Now, the trial judge also signed off on a certificate of conditions of probation, which included a $1,500 fine plus additional costs or mandatory fines. Additional costs or additional mandatory? The laboratory fee, drug assessment fee, his DNA testing fee. It includes fees and restitution and his probation costs. So those are costs, those aren't fines? Correct. Okay. Correct. But the fact that the defendant signed off on a sheet including mandatory fines, that is the people's position. That is separate and apart from the large fine that he was ordered to pay. Under the statute, the defendant could have been charged a $25,000 fine for this particular offense. A $15,000 fine. He agreed to $1,500. Right. He agreed to $1,500, but that's separate and apart from any mandatory fines that can be imposed upon the defendant and court costs. So you understand the opposing counsel's argument is $1,500 fines regardless of whether they're mandatory or not. Right. I'm saying the $1,500 fine is a fine in and of itself. Oh, a separate item. It's a separate line item. And in addition to that, whatever mandatory fines per the statute that are required for the defendant to pay, plus any court costs. What are the mandatory fines? The mandatory fines include... There's an all felony cases. There is a drug assessment. All drug offenses fine. There is... Are they called a fine? They're represented as fees on the sheet. Is there a difference between a fine and a fee? Yes, I believe Justice Wright knows that there is a difference. And there is a difference between the two. And under the statute, many of these are called mandatory fines. And they might be listed as fee within its name, but they are a fine. Five minutes, please, counsel. The nuances of the statute of fines and fees. But ultimately, the defendant agreed to this disposition. $1,500 fine is separate from those mandatory fines and court costs. Which he signed off on. All parties signed off on. The trial judge signed off on. And he received the benefit of that fine. Do you think anybody knows what this is? It's all a system. I sure hope so. It's all... Yeah, everybody hopes. I sure hope so. What's your position on whether it has actually been paid? Do you want to save Mr. Wegman some work and concede that $4,099 actually transferred hands here? Based on what was supplemented to the record, the clerk cost sheet that was given to my office shows that the defendant has paid all the fines because it was our original position that there was no evidence that the defendant should receive a refund because there is no evidence that he's paid all of the fines and fees. Based on that new cost sheet, it leads us to believe that he has paid it. But we would appreciate further confirmation, as Your Honor has requested, to ensure that that has actually been paid. There is an attachment to the reply that the clerk says they were. And there's somebody to help us with that. Agreed. Agreed. But I guess he's going to drive it to my office. Right. I prefer we be safe than sorry. But according to that sheet, everything has been paid. And, you know, rightfully so. That was what he was supposed to pay. And I'm not opposed to you and Mr. Wegman having a friendly conversation. If you are both satisfied that it was paid in full, just let us know. Just a letter to the court is fine. Stipulation. No problem. That is if you guys do communicate in friendly terms. I think we're on friendly terms, yes. If there are no further questions, we ask that this court affirm the defendant's conviction. Thank you. Mr. Wegman, I have one more question for you. And I am so sorry. No, I'm happy to take any questions you have. If your client paid in full without objecting to the balance due, that component of the sentence has been fulfilled, is the issue moved? I don't believe that it is. And I would turn to Whitfield for that, where in Whitfield the question was whether the extra three years, was it considered extra? Should it be offset? And it was used as an offset by the Supreme Court. We're asking for the same thing, that the extra be refunded to him because of the offset. We can't alter the mandatory fines. They should be included as part of the $1,500. But he shouldn't be required to pay extra where he agreed to pay $1,500. There was a dissent in that case. In Whitfield? It was in the case where Justice Wright and Justice Goldridge agreed. Oh. Well-reasoned dissent. But the rule is with the majority. But it's still a friendly conversation. And there's more than I will have one as well. I appreciate your input on that. I was going to step up and say I wanted to address the first issue first. But I was going to say I didn't want you to think that I'm afraid of the fines in these questions. I know you're not. And I knew I could count on you to address it if it needed to be. Is it an unfair characterization that I was making that this case could be somewhat analogous to not even making a motion to suppress when an attorney arguably brings a motion to suppress on grounds that may have little, if any, basis of success? Or does that need reasonable disdain? I think where I would disagree with counsel's characterization of my brief is that I was suggesting that an extra argument should have been raised. My point was this should have been the argument that was raised, not as a supplement, not after this one was denied. There was no reason for counsel to not raise it as the first issue and perhaps as the only issue. There was virtually no strength whatsoever to the one. It was almost more of a slow plea than it was an actual argument, given that it doesn't have to be anything extraordinary. It's a technical violation. And it counts. And it gives the officer a reasonable suspicion to pull over the car. What the officer lacked was probable cause to believe that he could search the car, that he could seize the defendant. There was nothing that authorized him to do that. Was there any argument? We had two motor vehicle violations in the site info. Is there any argument to the one of leaving a parallel apartment? I don't believe there is. I had thought and researched whether there could be an argument for the one where you're signaling. We all violate that, so we think there's no law anymore. Well, and there used to be some thinking that if nobody was around, it was like a tree falling in a forest. If you're in the country and you can't be seen, is it a violation? Not so much because you're not going to get caught, but because the purpose is to prevent an accident. And if there's nobody else out there, then the signal doesn't matter. But the fact of the matter is it's required and it's easy to prove and easy to spot. And, you know, so maybe you can make an argument. But it's been made in laws. Then you pull in the other argument about pulling aside from the curb, and there's really no argument that can be made there. Here you have a very strong argument that, you know, the law is very clear. You cannot discern cocaine from another white-powdered, non-narcotic substance just by looking at it. It always has to be tested. And experts have testified before the court, and the court has relied upon that testimony to say, you can't tell the difference without testing it. So when the state brings up cases involving marijuana to say, well, you can tell a drug. Well, yes, with certain experience, an officer can determine if burnt cannabis is cannabis, or even looking at the leafy substance. I believe that was Dazenbrock. And in Dazenbrock, they drew the distinction between marijuana and cocaine to say, this isn't like cocaine. We can tell the difference with marijuana. And the sheriff with experience in that case was considered to be able to tell the difference between marijuana and leaves that are simply out. In this case, there was no reason for defense counsel not to file a motion that has legitimacy and has merit and strength. And particularly given that these motions are raised before trial, there's no concern about creating a question in front of the jury's mind. You're not going to poison that well. It's a decision made by the judge. And if you win, the case is over. There was no reason for defense counsel not to raise it, particularly considering that he really had nothing else to raise. And to that extent, counsel was ineffective. This was a stipulated bench trial. Basically, they stipulated to the testimony at the suppression hearing. It was stipulated to Officer Miller's testimony. There was no information garnered with respect to the search and whether it was consensual or not. The field test of the fingernail. If the defendant consented to that, would that not have negated the motion to suppress? It would have, but I suspect that it would also have been brought before the court and the court or the officer would have testified. I asked. He said yes. There was no indication. And certainly that would be something that I believe an officer would have indicated to the court, so as to negate that as an issue. Okay, so the absence of information about whether the test was consensual, we can't fill in the blanks. We just have to assume it was a non-consensual search. I think that the facts are sufficient to establish that it was not a consensual search. If there are no other questions, then I would ask that this Court reverse the findings of the trial. Counsel, thank both attorneys in this case. I will take this matter under advisement and adjourn for the next hearing. Thank you. Ladies and gentlemen, please rise.